[Cite as *Clucas v. RT 80 Express, Inc.*, 2012-Ohio-1259.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

MARK T. CLUCAS, SR.

    Appellant

    v.

RT 80 EXPRESS, INC.

    and

DIRECTOR, OHIO DEPARTMENT OF
JOB AND FAMILY SERVICES

    Appellees

C.A. No.      11CA009989

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CV169073

DECISION AND JOURNAL ENTRY

Dated: March 26, 2012

CARR, Presiding Judge.

**{¶1}** Appellant, Mark Clucas, appeals the judgment of the Lorain County Court of Common Pleas which affirmed the decision of the Unemployment Compensation Review Commission ("UCRC") which denied Mr. Clucas' application for unemployment benefits. This Court affirms.

I.

**{¶2}** Mr. Clucas was an interstate truck driver for Rt. 80 Express, Inc. from February 21, 2008, until his termination from employment on August 8, 2009. He filed an application for unemployment benefits with appellee, Ohio Department of Jobs and Family Services ("ODJFS"), which disallowed his request for unemployment benefits based on its finding that Rt. 80 terminated him for just cause. Mr. Clucas requested a redetermination. The Director

affirmed the initial determination to deny unemployment compensation benefits to Mr. Clucas. Mr. Clucas then appealed to the UCRC.

{¶3} The matter proceeded to hearing before the UCRC on the following issue: "Was claimant discharged by Rt. 80 Express, Inc. for just cause in connection with work?" On July 14, 2010, the hearing officer found that Rt. 80 has a company policy which indicates that an employee who tests positive for drug use will be discharged. The hearing officer further found that Mr. Clucas tested positive for marijuana use when he knew or should have known that such results would result in his discharge. The hearing officer concluded that Mr. Clucas' positive drug test established fault on the part of the employee so that Rt. 80 terminated him for just cause.

II.

**ASSIGNMENT OF ERROR**

THE APPELLANT WAS NOT FIRED FOR JUST CAUSE.

{¶4} Mr. Clucas argues that the trial court erred by affirming the decision of the UCRC because that decision is unreasonable, unlawful, and against the manifest weight of the evidence. This Court disagrees.

{¶5} R.C. 4141.29(D)(2)(a) prohibits the payment of unemployment compensation if the employee "has been discharged for just cause in connection with the individual's work[.]" This Court has defined just cause and the role it plays in R.C. 4141.29 determinations as follows:

> "Just cause, *in the statutory sense*, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." (Emphasis added.) *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 697 (1995), quoting *Irvine v. State, Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985). It is important to distinguish between just cause for discharge in the context of unemployment compensation and in other contexts. An employer may justifiably discharge an employee without incurring liability for wrongful discharge, but that same employee may be entitled to unemployment

compensation benefits. *See Adams v. Harding Machine Co.*, 56 Ohio App.3d 150, 155 (3d Dist.1989). This is so because just cause, under the Unemployment Compensation Act, is predicated upon employee *fault*. *Tzangas*, 73 Ohio St.3d at 698; *Adams*, 56 Ohio App.3d at 155. We are, therefore, unconcerned with the motivation or correctness of the decision to discharge. *Friedman v. Physicians and Surgeons Ambulance Serv.*, 9th Dist. No. 10287, 1982 WL 2867 (Jan. 6, 1982). The Act protects those employees who cannot control the situation that leads to their separation from employment. *See Tzangas*, 73 Ohio St.3d at 697.

*Durgan v. Ohio Bur. of Emp. Serv.*, 110 Ohio App.3d 545, 549-550 (9th Dist.1996).

{¶6} Consistent with that purpose, courts have repeatedly held that a discharge is considered for just cause where an employee's conduct demonstrates some degree of fault, such as behavior that displays an unreasonable disregard for his employer's best interests. *Tzangas*, 73 Ohio St.3d at paragraph two of the syllabus; *Kiikka v. Admr., Ohio Bur. of Emp. Serv.*, 21 Ohio App.3d 168, 169 (8th Dist.1985); *Sellers v. Bd. of Rev.*, 1 Ohio App.3d 161, 164 (10th Dist.1981). The Ohio Supreme Court has specifically held:

When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.

*Tzangas*, 73 Ohio St.3d at 697-698.

{¶7} The Ohio Supreme Court has further stated that the employee has the burden to prove his entitlement to unemployment compensation benefits under R.C. 4141.29(D)(2)(a). *Irvine v. State, Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985). The employee must provide evidence his discharge was without just cause by demonstrating he was without fault in the incident resulting in his termination to show he is entitled to unemployment compensation. *Id*. If the employee is unhappy with the UCRC's decision concerning his entitlement to unemployment compensation, he may appeal that decision before a common pleas court, which would hear the case upon the record as certified and provided by the UCRC. R.C. 4141.282(H). Only if the court finds the UCRC's decision was "unlawful, unreasonable, or

against the manifest weight of the evidence" is it required to reverse, vacate, modify, or remand such decision. *Id*. Absent such a finding, the reviewing court must affirm the UCRC's decision as it is the UCRC's function to make factual findings and determine the credibility of witnesses in unemployment compensation cases. *Irvine* at 18. If the record reveals evidence to support the UCRC's findings, the reviewing court cannot substitute its own findings of fact for those of the UCRC. *Wilson v. Unemployment Comp. Bd. of Rev.*, 14 Ohio App.3d 309, 310 (8th Dist.1984). Nonetheless, the reviewing court's function involves determining whether the UCRC's decision is supported by evidence in the record. *Id.* at 311.

{¶8} This Court has discussed its duty to review a UCRC decision under the same scope of review:

> R.C. Chapter 4141 does not distinguish between the scope of review of a common pleas court and that of an appellate court with respect to Review Commission decisions. *See* R.C. 4141.282(H)-(I). Additionally, the Supreme Court of Ohio has confirmed that "there is no distinction between the scope of review of common pleas and appellate courts regarding 'just cause' determinations under the unemployment compensation law." *See Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 551 (9th Dist.1996), citing *Tzangas v. Administrator, Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 696-697 (1995).

> Thus, in a review of a decision by the Review Commission regarding eligibility for unemployment compensation benefits, an appellate court is bound by the same limited scope of review as that required of the common pleas courts. *Irvine*, 19 Ohio St.3d at 18. Therefore, an appellate court may only reverse an unemployment compensation eligibility decision by the Review Commission if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. *Tzangas*, 73 Ohio St.3d at 696. Also, this Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court, in such cases. *Barilla v. Ohio Dept. of Job & Family Servs.,* 9th Dist. No. 02CA008012, 2002-Ohio-5425, ¶ 6, citing *Tenny v. Oberlin College*, 9th Dist. No. 00CA007661, 2000 WL 1875394 (Dec. 27, 2000).

*Upton v. Rapid Mailing Servs.,* 9th Dist. No. 21714, 2004-Ohio-966, ¶ 8-9.

{¶9} In determining whether a UCRC decision is or is not supported by the manifest weight of the evidence, this Court applies the civil manifest weight of the

evidence standard set forth in *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The Ohio Supreme Court has clarified that:

> [W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). This presumption arises because the trial judge had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.* at 80. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* at 81.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶10} In the instant matter, the UCRC found that a post-accident drug test indicated that Mr. Clucas' urine tested positive for marijuana and that the urine specimen had been diluted. The UCRC further found that Rt. 80 has a policy that employees who test positive for drug use will be terminated and that Mr. Clucas knew or should have known about the company's policy. The commission, therefore, concluded that Rt. 80 terminated Mr. Clucas' employment for just cause based on his positive drug test.

{¶11} At the hearing, only Mr. Clucas testified. He testified that he began working for Rt. 80 on February 21, 2008. He admitted that he had been involved in a minor accident and that he submitted to post-accident drug testing pursuant to the company's request. He admitted that the medical review officer deemed the results of his test to be positive for marijuana and that the results were in fact accurate in showing that he had used marijuana. Moreover, Mr. Clucas

testified that he told the medical review officer who administered his drug test that he had used marijuana.

{¶12} Although Mr. Clucas denied having ever received a written copy of Rt. 80's drug testing policies, the record transferred to the UCRC for review contains a copy of a "DRUG AND ALCOHOL HANDBOOK CERTIFICATE OF RECEIPT" which bears Mr. Clucas' printed name, a handwritten date of "2-21-08," and Mr. Clucas' signature. Per this document, Mr. Clucas certified that he had received a copy of the company's drug testing policies and procedures.

{¶13} The record further contains Rt. 80's responses to ODJFS' request for information regarding the termination. Christine Chrustic, an office manager for Rt. 80, informed the agency that Rt. 80 has a written company policy which requires employees involved in any accident with company equipment to submit to a post-accident drug test. Ms. Chrustic further wrote that the company has a "Zero Tolerance" policy for drug use and Mr. Clucas was notified of that policy both verbally and in writing by way of the company's handbook. Ms. Chrustic concluded that, not only did Mr. Clucas test positive for drug use, but he notified company dispatch before the results were received that they may be positive.

{¶14} Mr. Clucas argues that there was no legal requirement that he submit to a drug test after his involvement in a minor accident. He references the Federal Motor Carrier Safety Administration's regulations and the Motor Carrier Safety Rules Handbook of the Public Utilities Commission of Ohio. He ignores the fact that the company reported that it required him to submit to a post-accident drug test pursuant to its own internal company policies. Mr. Clucas does not argue that the company was prohibited from establishing such company policies. His argument in this regard is not persuasive.

{¶15} He further argues that he never received a copy of the company's written drug testing policies. Rt. 80 submitted a copy of Mr. Clucas' signed certification that he had in fact received the company drug testing policies and procedures handbook on the date he was hired. As the hearing officer was in the best position to gauge Mr. Clucas' credibility in light of the information provided by Rt. 80, we must presume that the hearing officer's findings are correct. *See Seasons Coal*, 10 Ohio St.3d at 80.

{¶16} Mr. Clucas next argues that he did not in fact fail his drug test notwithstanding the result evidencing 24 ng/ml[1] of THC (marijuana) in his urine. He does not dispute the accuracy of the measurement; instead, he argues that any result less than 50 ng/ml must be deemed a negative result pursuant to 49 C.F.R. 40.87(a). Section 40 of the Code of Federal Regulations distinguishes between Department of Transportation drug and alcohol testing and non-Department of Transportation drug and alcohol testing. This Court cannot find any provision in the regulations prohibiting an employer from adopting a zero tolerance drug policy which proscribes illegal drug use evidenced by any amount of the drug in an employee's system. Moreover, Mr. Clucas does not argue that such a regulation exists. Accordingly, we are not persuaded that his drug test results indicating 24 ng/ml of marijuana in his urine must only be construed as 0 ng/ml.

{¶17} Bearing in mind that Mr. Clucas has the burden of proving his entitlement to unemployment compensation benefits, this Court concludes that the UCRC's decision that Mr. Clucas was terminated for just cause by Rt. 80 is neither unlawful, unreasonable, nor against the manifest weight of the evidence. As a reviewing court, we must defer to the UCRC's credibility assessment and factual determinations in this case. Rt. 80 demonstrated, based on information

---

[1] Although he testified at the hearing in terms of milligrams of marijuana, his drug test results and the regulation he cites discuss results in terms of nanograms.

submitted to ODJFS and transferred as part of the record considered by commission, that it had an internal company policy requiring employees to submit to post-accident drug tests. Mr. Clucas submitted to the test, informed his employer that he may test positive, and in fact tested positive for some amount of marijuana in his urine. Although Mr. Clucas denied ever having received a written copy of the company's drug and alcohol testing policies and procedures, a copy of his certification to the contrary is contained in the record. Ms. Chrustic informed ODJFS pursuant to the agency's request for information that Rt. 80 has a zero tolerance policy for illegal drug use. Mr. Clucas admitted to having used marijuana prior to the company's receipt of his drug test results. Accordingly, the UCRC's findings that Mr. Clucas was at fault and that Rt. 80 terminated his employment for just cause are not unlawful, unreasonable, or against the manifest weight of the evidence. Mr. Clucas' assignment of error is overruled.

### III.

**{¶18}** Mr. Clucas' sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR.

APPEARANCES:

WILLIAM DERKIN, Attorney at Law, for Appellant.

MICHAEL DEWINE, Attorney General, and PATRICK MACQUEENEY, Assistant Attorney General, for Appellee.

JAMES J. WAGNER, Attorney at Law, for Appellee.