[Cite as *Sturgeon v. Lucas Plumbing & Heating, Inc.*, 2012-Ohio-2240.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

VICTORIA Y. STURGEON

    Appellant

    v.

LUCAS PLUMBING AND HEATING INC.,
et al.

    Appellees

C.A. No.     11CA010010

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     10CV168211

DECISION AND JOURNAL ENTRY

Dated: May 21, 2012

BELFANCE, Judge.

{¶1} Appellant Victoria Sturgeon appeals from the decision of the Lorain County Court of Common Pleas affirming the decision of the Ohio Unemployment Compensation Review Commission ("UCRC") which denied Ms. Sturgeon's claim. For the reasons set forth below, we affirm.

I.

{¶2} Ms. Sturgeon began working for Appellee Lucas Plumbing and Heating, Inc. ("Lucas Plumbing") as a secretary in August 1993. Lucas Plumbing terminated Ms. Sturgeon's employment in September 2009. Ms. Sturgeon filed an application for the determination of unemployment compensation benefit rights. In December 2009, Appellee the Director of the Office of Unemployment Compensation for the Ohio Department of Job and Family Services ("the Director"), reversed its initial determination and concluded that Ms. Sturgeon was entitled to unemployment compensation benefits as she was terminated without just cause. Lucas

Plumbing appealed the redetermination and the appeal was transferred to the UCRC. A hearing officer subsequently held a telephonic hearing. The hearing officer issued a decision denying Ms. Sturgeon's claim and concluding she was terminated for just cause and ordered the repayment of benefits received. Ms. Sturgeon requested that UCRC review the hearing officer's determination and the UCRC declined review. Ms. Sturgeon then filed an appeal in the Lorain County Court of Common Pleas. Ultimately, the lower court affirmed the decision, and Ms. Sturgeon has sought review by this Court, raising three assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE UCRC'S DECISION THAT STURGEON WAS INSUBORDINATE BY REFUSING TO ANSWER QUESTIONS REGARDING WHETHER SHE HAD DIRECTED WORK TO A FORMER EMPLOYEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR II

UCRC'S CONCLUSION THAT STURGEON REFUSED TO ANSWER ANY QUESTIONS AND THUS WAS INSUBORDINATE IS LIKEWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR III

THE UCRC ERRED BY FINDING THAT STURGEON WAS TERMINATED FOR "INSUBORDINATION."

{¶3} Ms. Sturgeon asserts in her first assignment of error that the UCRC's finding that she was insubordinate by failing to answer questions concerning directing work to a former employee is against the manifest weight of the evidence. Ms. Sturgeon asserts in her second assignment of error that the UCRC's finding that she failed to answer any questions and, thus, was insubordinate is against the manifest weight of the evidence. Ms. Sturgeon asserts in her third assignment of error that the UCRC erred by finding that she was terminated for

insubordination. As Ms. Sturgeon's assignments of error are related, they will be addressed together.

{¶4} The UCRC determined that Ms. Sturgeon was not entitled to benefits because she was terminated for just cause in connection with her work. R.C. 4141.29(D)(2)(a) states that "no individual may serve a waiting period or be paid benefits under the following conditions: * * * [f]or the duration of the individual's unemployment if the director finds that: [t]he individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * * ." *See also Williams v. Ohio Dept. of Job & Family Servs.,* 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 14-19. "The claimant has the burden of proving [his or] her entitlement to unemployment compensation benefits * * * ." *Irvine v. State Unemp. Comp. Bd. of Rev.,* 19 Ohio St.3d 15, 17 (1985).

{¶5} "This Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court, in unemployment compensation cases." *Moore v. Comparison Market, Inc.,* 9th Dist. No. 23255, 2006-Ohio-6382, ¶ 8. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the [UCRC's] decision is supported by the evidence in the record." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.,* 73 Ohio St.3d 694, 696 (1995).

> The Unemployment Compensation Review Commission's determination of whether a claimant was discharged with just cause is appealable to the court of common pleas: "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." R.C. 4141.282(H). This limited standard of review applies to all appellate courts.

*Williams* at ¶ 20.

{¶6}    In the instant matter, the trial court affirmed the decision of UCRC, concluding that Ms. Sturgeon was terminated for just cause. Ms. Sturgeon asserts that the UCRC's decision is against the manifest weight of the evidence.

{¶7}    Although not defined by statute, the Ohio Supreme Court has stated that "just cause is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." (Internal quotations and citation omitted.) *Williams,* 2011-Ohio-2897, at ¶ 22. "Fault on an employee's part is an essential component of a just-cause termination." *Id.* at ¶ 24. "[C]ourts have repeatedly held that a discharge is considered for just cause where an employee's conduct demonstrates some degree of fault, such as behavior that displays an unreasonable disregard for his employer's best interests." *Clucas v. RT 80 Express, Inc.*, 9th Dist. No. 11CA009989, 2012-Ohio-1259, ¶ 6. This Court has noted that "even a single incident of misconduct can create just cause for termination." *Moore*, 2006-Ohio-6382, at ¶ 25. "The employee must provide evidence his [or her] discharge was without just cause by demonstrating he [or she] was without fault in the incident resulting in his [or her] termination to show he [or she] is entitled to unemployment compensation." *Clucas* at ¶ 7.

{¶8}    "In determining whether a UCRC decision is or is not supported by the manifest weight of the evidence, this Court applies the civil manifest weight of the evidence standard * * * ." *Id.* at ¶ 9. Thus, "'[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *Id.,* quoting *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus. "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct." (Internal quotations and citation omitted.) *Clucas* at ¶ 9.

{¶9} Collectively, Ms. Sturgeon asserts in her assignments of error that the UCRC's findings that she refused to answer questions concerning the possible direction of work to a former employee, that she was insubordinate, and that she was terminated for insubordination are against the manifest weight of the evidence.

{¶10} We begin by noting that the UCRC decision does not mention the words insubordinate or insubordination, despite the fact that that is how Joseph Lucas, the president of Lucas Plumbing, characterized Ms. Sturgeon's behavior during his testimony.

{¶11} The UCRC's findings of fact are as follows:

The claimant worked for [Lucas Plumbing] from August 16, 1993 through September 29, 2009. Claimant worked as a secretary for the employer.

On September 29, 2009, claimant was called into a meeting with the company president, Joseph Lucas, and the company attorney, Anthony Giardini. Claimant was informed that she was going to be asked questions about the activities of Larry Roberts, an employee who had been discharged a few days earlier. Claimant lived with Mr. Roberts. Mr. Roberts had been discharged because the employer believed he was performing work outside of his work hours that should have been performed by the employer. The employer intended to question claimant concerning possible direction of work to Mr. Roberts instead of the work being scheduled for the employer.

The claimant informed the company president that she would answer no questions concerning Mr. Roberts' activities. The claimant was informed at that time that she was being discharged. The company president indicated he did not feel comfortable with claimant continuing to work for the company.

The claimant has reported at the hearing on this matter that she had informed the employer that she would answer questions concerning the direction of work to Mr. Roberts. The employer has reported that claimant did not state that at the time of her discharge.

{¶12} Based on the above findings, the UCRC concluded that:

The claimant was discharged by [Lucas Plumbing] when she refused to answer questions from the company president concerning the possible direction of work to a former employee. Claimant was in a position to direct work to the former employee when she worked as a secretary. The claimant, at the hearing on this matter, denied taking such action. When questioned by the employer, claimant refused to answer any questions. The employer had a right to question claimant

concerning activities which may damage the employer. The testimony of the company president, Joseph Lucas, is credible that claimant simply refused to answer any questions regarding the former employee. The claimant's actions were not those an employer could reasonably expect from an employee. The claimant was discharged by [Lucas Plumbing] for just cause in connection with work.

{¶13} We conclude that UCRC's decision and challenged findings are not against the manifest weight of the evidence.

{¶14} Mr. Lucas, the president of Lucas Plumbing testified that Ms. Sturgeon was terminated because she refused to cooperate in the company's investigation concerning another former employee. Mr. Lucas averred that the former employee, Mr. Roberts, who lived with Ms. Sturgeon, was "doing side work[.]" Mr. Lucas thus wanted to determine whether Ms. Sturgeon knew of Mr. Roberts' violations and whether she was also violating company policy by directing customers to Mr. Roberts. Mr. Lucas stated that "we called Ms. Sturgeon in [] via my counsel and we wanted to talk to her about her knowledge of his doing side work since she held a sensitive position in the company and she refused repeatedly to answer any questions." Mr. Lucas testified that, because Ms. Sturgeon answered all the incoming calls, she was in a position to be able to direct customers to Mr. Roberts instead of the company. Mr. Lucas indicated that "[w]e tried to tell her that you know, this is involving him and we were trying to get to the bottom of it and she refused to answer any questions."

{¶15} Ms. Sturgeon also testified at the telephonic hearing. She indicated that Mr. Lucas wanted to question her about Mr. Roberts' "work activities[.]" She testified that she told Mr. Lucas before the meeting with him and his attorney that she "had no knowledge" of them, but she would be happy to answer questions about her own work activities. She stated that she was terminated because Mr. Lucas "didn't feel comfortable with [her] being around." She also

stated the Mr. Roberts was fired for filing a grievance and an action with the NLRB and that Mr. Lucas never questioned her about her possibly directing work to Mr. Roberts.

{¶16} Thus, the UCRC was presented with conflicting testimony. The UCRC found Mr. Lucas' testimony to be more credible; a determination that this Court cannot question. *See Clucas*, 2012-Ohio-1259, at ¶ 9. After reviewing the certified record, we cannot say that the decision or challenged findings of the UCRC are against the manifest weight of the evidence in light of the UCRC's credibility determinations. There was testimony that Ms. Sturgeon completely refused to answer any questions posed to her, that she was in a position to direct work to Mr. Roberts, that she lived with Mr. Roberts, and that Mr. Roberts was doing side work. Ms. Sturgeon even acknowledged during her testimony that Lucas Plumbing had the right to ask her questions about whether she was directing work to Mr. Roberts. Notably, Ms. Sturgeon does not argue that, if she had refused to answer questions about whether she was directing customers to Mr. Roberts that Lucas Plumbing would not have had just cause to terminate her; her argument instead is that she did not refuse to answer questions about that because those specific questions were not posed to her and, thus, she was not insubordinate. Her argument ignores Mr. Lucas' testimony that she repeatedly refused to answer *any* questions. Thus, it does not appear that Mr. Lucas was presented with the opportunity to specifically ask Ms. Sturgeon about her involvement, if any, in the side-work issue. Absent some indication from Ms. Sturgeon at the meeting that there was a particular category of questions she would answer, we cannot say that Mr. Lucas' failure to ask that specific question renders the UCRC's decision that Ms. Sturgeon was terminated for cause against the manifest weight of the evidence. While it is true that *her* testimony supports her argument, Mr. Lucas' testimony, along with the reasonable inferences that can be drawn from it, do not. The hearing officer ultimately found Mr. Lucas' version of

events to be more credible than Ms. Sturgeon's version. As there was credible evidence to support the UCRC's decision, we are bound to affirm it. Accordingly, we overrule Ms. Sturgeon's assignments of error.

## III.

**{¶17}** In light of the foregoing, we affirm the judgment of the Lorain County Court of Common Pleas affirming the decision of the UCRC.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

BRENT ENGLISH, Attorney at Law, for Appellant.

ANTHONY GIARDINI, Attorney at Law, for Appellee.

MICHAEL DEWINE, Ohio Attorney General, and PATRICK MACQUEENEY, Assistant Attorney Genernal, for Appellee.