[Cite as *Rodriguez v. S. Star Corp.*, 2013-Ohio-2377.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| JOSE RODRIGUEZ | C.A. No.     12CA0049-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SOUTH STAR CORP., et al. | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellants | CASE No.     11 CIV 1677 |

DECISION AND JOURNAL ENTRY

Dated: June 10, 2013

BELFANCE, Presiding Judge.

{¶1}   Defendant-Appellant South Star Corporation ("South Star") appeals the decision of the Medina County Court of Common Pleas reversing the decision of the Unemployment Compensation Review Commission ("UCRC"), which concluded that Plaintiff-Appellee Jose Rodriguez was terminated for just cause and was therefore not entitled to unemployment compensation.  We affirm the decision of the Medina County Court of Common Pleas.

I.

{¶2}   Mr. Rodriguez worked for South Star providing landscaping services from March 2010 through December 1, 2010.  In May 2010, Mr. Rodriguez heard another employee named Ray refer to Mr. Rodriguez as "Hadji."  Mr. Rodriguez asked what that term meant and Ray defined the word in terms of another highly offensive racial slur.[1]  Despite Mr. Rodriguez raising the issue with individuals in charge on more than one occasion and being told the issue would be

---

[1] At the hearing, Mr. Rodriguez testified that Ray told him a Hadji was a "nigger[.]"

taken care of, Ray continued to refer to Mr. Rodriguez by the racial slur on more than one occasion. However, prior to November, Mr. Rodriguez was assigned to work with other employees.

{¶3} In November, Mr. Rodriguez reported the problem to individuals in the quality control department. Immediately prior to the termination of his employment with South Star, Mr. Rodriguez was assigned to work with Ray. Mr. Rodriguez informed his supervisor that he would not work with Ray and the supervisor told him then he was "out of here."

{¶4} Mr. Rodriguez thereafter filed for unemployment benefits. The director of the Ohio Department of Job and Family Services disallowed Mr. Rodriguez' application, concluding that Mr. Rodriguez was discharged with just cause. The matter was then transferred to the UCRC. A telephonic hearing was held before a hearing officer. Mr. Rodriguez provided testimony at the hearing; however, no representative of South Star appeared for, or testified on behalf of, South Star. The hearing officer issued a decision concluding that Mr. Rodriguez was discharged for just cause. Mr. Rodriguez sought further review by the UCRC but the request was not granted. Mr. Rodriguez then appealed to the Medina County Court of Common Pleas, which reversed the decision of the UCRC and found Mr. Rodriguez eligible to receive unemployment benefits. South Star has appealed, raising a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE REVIEW COMMISSION'S DETERMINATION THAT RODRIGUEZ WAS JUSTIFIABLY TERMINATED SHOULD HAVE BEEN UPHELD AS LAWFUL, REASONABLE, AND NOT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶5}** South Star asserts in its sole assignment of error that the decision of UCRC should not have been reversed by the Medina County Court of Common Pleas. We do not agree.

**{¶6}** "'This Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court, in unemployment compensation cases.'" *Sturgeon v. Lucas Plumbing and Heating, Inc.*, 9th Dist. No. 11CA010010, 2012-Ohio-2240, ¶ 5, quoting *Moore v. Comparison Market, Inc.*, 9th Dist. No. 23255, 2006–Ohio–6382, ¶ 8. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the [UCRC's] decision is supported by the evidence in the record." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696 (1995).

> "The Unemployment Compensation Review Commission's determination of whether a claimant was discharged with just cause is appealable to the court of common pleas: 'If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.' R.C. 4141.282(H). This limited standard of review applies to all appellate courts."

*Sturgeon* at ¶ 5, quoting *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20. "This Court applies the same standard in determining whether both criminal and civil judgments are against the manifest weight of the evidence." *Upton v. Rapid Mailing Servs.*, 9th Dist. No. 21714, 2004-Ohio-966, ¶ 10; *see also Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17.

> Therefore, in reviewing a civil judgment, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citations omitted.) *Upton* at ¶ 10; *see also Eastley* at ¶ 20.

{¶7}    Pursuant to R.C. 4141.29(D)(2)(a), "no individual may * * * be paid benefits * * * [f]or the duration of the individual's unemployment if the director finds that [t]he individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * *."

> Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act.  The Act exists to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.  The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.  Thus, while a termination based upon an employer's economic necessity may be justifiable, it is not a just cause termination when viewed through the lens of the legislative purpose of the Act.

(Internal quotations and citations omitted.)  *Tzangas,* 73 Ohio St.3d at 697.  "Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination." *Id.* at 698.  "[T]he question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case." *Id.*

{¶8}    In the instant matter the UCRC made the following findings:

> In May 2010, [Mr. Rodriguez] complained to a supervisor * * * about another employee named "Ray."  [Mr. Rodriguez] complained that Ray did not address him by using his first name.  He also stated that Ray had called him a "Hadji." [Mr. Rodriguez] was uncertain of the meaning of the term, but felt that it was offensive.

> As an accommodation, [the supervisor] assigned [Mr. Rodriguez] to work with other employees beginning in May 2010 and continuing until November 29, 2010.

> On November 29, 2010, [the supervisor] told [Mr. Rodriguez] that he would have to work on Ray's crew that day.  * * * [Mr. Rodriguez] told [the supervisor] that he did not want to do that.  [The supervisor] repeated the instruction to [Mr. Rodriguez] that he would be working on Ray's crew on that day.  [Mr. Rodriguez[

again refused to agree to work on a crew with Ray. [The supervisor] told [Mr. Rodriguez] that he would be terminated if he refused to go on the assignment. [Mr. Rodriguez] again refused to work with Ray. He was therefore discharged.

{¶9} While this Court can find evidence in the record to support the majority of the hearing officer's findings, this Court cannot say that the hearing officer's and, thus, the UCRC's conclusion based upon those findings is reasonable. *See Williams,* 129 Ohio St.3d 332, 2011-Ohio-2897, at ¶ 20. In concluding that Mr. Rodriguez' conduct in refusing to work amounted to insubordination, the hearing officer did not conclude that Mr. Rodriguez' testimony was not credible. Further, there is nothing in the record that even suggests that Mr. Rodriguez was not repeatedly called an offensive name by another employee. While South Star, in its written response,[2] downplays the nature of what Mr. Rodriguez was subjected to by referring to the racial slurs as "slang," South Star does not assert that Mr. Rodriguez' claims are false.

{¶10} The record indicates that Ray repeatedly referred to Mr. Rodriguez using a highly offensive racial slur, that Mr. Rodriguez reported this problem on multiple occasions to management, that management said it would be taken care of, and that, prior to the incident in November, Mr. Rodriguez was assigned to work with employees other than Ray. In addition, Mr. Rodriguez testified that, on the day in November when Mr. Rodriguez got to work, Ray stated that "Hadji, you're with me today." Mr. Rodriguez informed management that he would not work with Ray, but management would not put him with a different crew. Mr. Rodriguez testified that there were six crews working that day, and, thus, he could have been placed with another group. Additionally, despite the hearing officer's statement that Mr. Rodriguez would

---

[2] South Star, while notified of the telephonic hearing, did not appear for, nor testify at, the hearing.

not have had to "work side-by-side with Ray[,]" Mr. Rodriguez offered uncontroverted testimony that "we would have traveled in the same truck and [because Ray would have been] the [] driver of the truck [he would have been] the crew leader * * * [and, thus, he would have been] my boss that day."

{¶11} Despite this evidence, and the hearing officer's factual findings, the hearing officer stated that while Mr. Rodriguez testified that "Ray had referred to him as a Hadji on a number of different occasions[,] [t]he evidence does not show that Ray's conduct was so offensive that it would negatively impact a reasonable person's ability to perform his duties." The hearing officer reasoned that "[i]t is a fact of life that employees do not choose their co-workers. It is common in any employment environment to be required to work with individuals who may be difficult to get along with." Thus, the hearing officer concluded that South Star "properly discharged [Mr. Rodriguez] when he refused a proper order."

{¶12} We cannot conclude that the hearing officer's conclusions were reasonable. In the context of determining whether an employee subject to harassment was justified in quitting, courts have stated that, "where an employee's initial complaints do not prompt the employer to change h[is] working conditions, the employee may be relieved of her duty to further pursue internal remedies. Likewise, an employee need not indefinitely subject h[im]self to abusive conduct while waiting for h[is] employer to respond." (Internal quotations and citations omitted.) *Underhill v. Unemp. Comp. Rev. Comm.*, 10th Dist. No. 10AP-617, 2011-Ohio-1598, ¶ 20. Mr. Rodriguez' actions corresponded to those of an ordinary, intelligent person. Mr. Rodriguez had informed management of the problem with Ray on more than one occasion. It is undisputed that management could have placed Mr. Rodriguez with a different crew of employees that day. Thus, management's decision to require Mr. Rodriguez to work with Ray

anyway was clearly unreasonable under the circumstances. *See DiGiannantoni v. Wedgewater Animal Hosp., Inc.,* 109 Ohio App.3d 300, 307 (10th Dist.1996) (noting that case law supported the conclusion that generally "an employee must notify the employer of the [harassment] and request that it be resolved, and thus give the employer an opportunity to solve the problem before the employee quits the job[]"); *Belle Tire Distribs., Inc. v. Ohio Dept. of Job & Fam. Servs.*, 8th Dist. No. 97102, 2012-Ohio-277, ¶ 17 ("[T]he Review Commission had competent, credible evidence before it that Belle Tire failed to remedy the harassment even though Cook continued to report it. Based on these facts, the Review Commission determined that an ordinary, intelligent person would have quit under these circumstances and labeled Cook's actions as just."). In light of the foregoing, we conclude that the decision of the UCRC was unreasonable. This is not a situation where two employees may have had a personality conflict. We find it unreasonable to conclude that a person who is forced to work with someone who repeatedly refers to him by highly offensive racial slurs is an equivalent situation to someone assigned to work with a "difficult" co-worker. Given the undisputed facts, it is apparent that Mr. Rodriguez was not at fault for his discharge and that he was terminated without just cause. *See Tzangas,* 73 Ohio St.3d at paragraph two of the syllabus ("Fault on behalf of the employee is an essential component of a just cause termination."). South Star's assignment of error is overruled.

### III.

{¶13} The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

SCOTT H. RUPORT and ANTHONY R. BEERY, Attorneys at Law, for Appellant.

SUSAN SHEFFIELD, Attorney at Law, for Appellant.

DANIEL F. MAYNARD, Attorney at Law, for Appellee.