[Cite as *Akron v. Dir., Ohio Dept. of Job & Family Servs.*, 2015-Ohio-5376.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| CITY OF AKRON | | C.A. No. 27489 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DIRECTOR, ODJFS, et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. CV 2013 04 2202 |

DECISION AND JOURNAL ENTRY

Dated: December 23, 2015

MOORE, Judge.

{¶1} The City of Akron ("the City") appeals from the trial court's judgment affirming the decision of the Unemployment Compensation Review Commission ("the Commission"). We affirm.

I.

{¶2} John R. Gardner worked as a firefighter/medic for the City. In 2009, he injured his knee, and thereafter, he worked light duty from October 21, 2009 to October 6, 2010 pursuant to a Transitional Work Policy ("TWP") negotiated between Mr. Gardner's union and the City. Mr. Gardner was no longer permitted to work light duty as of October 6, 2010 pursuant to the terms of the TWP because he had not made any medical improvements. Thereafter, Mr. Gardner filed for permanent disability, and, pursuant to the TWP, he was permitted to work light duty, for a period no longer than 180 days, while his application was pending. Mr. Gardner worked this period of light duty from June 27, 2011 to December 3, 2011, when he was denied disability

benefits. Thereafter, Mr. Gardner utilized his remaining accrued paid leave time, which he exhausted on August 17, 2012. After that date, Mr. Gardner was placed on sick leave without pay.

{¶3} On October 1, 2012, Mr. Gardner filed an application for unemployment compensation benefits, which the Director of the Ohio Department of Job and Family Services ("the Director") approved. The City appealed that decision, and the Director issued a redetermination, in which it continued to allow Mr. Gardner's claim. The City appealed that decision, and jurisdiction was transferred to the Commission.

{¶4} During the proceedings before the Director and the Commission, Mr. Gardner, his union, and the City engaged in a process to assist Mr. Gardner in finding a suitable position. As part of this process, the mayor offered Mr. Gardner the position of Safety Communications Director. This position required Mr. Gardner to pass a typing test, and he was initially unable to do so. Subsequently, the mayor permitted Mr. Gardner to commence working in the position prior to passing the typing test. Mr. Gardner commenced working in this capacity on December 24, 2012.

{¶5} Thereafter, a hearing officer with the Commission determined that Mr. Gardner was eligible for unemployment compensation through December 24, 2012. The City requested the Commission to further review the hearing officer's decision, and the Commission disallowed the request. The City then appealed the Commission's decision to the trial court. The trial court affirmed the decision of the Commission.

{¶6} The City appealed from the decision of the trial court, and it now raises one assignment of error for our review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY UPHOLDING THE []COMMISSION'S DECISION TO ALLOW [MR.] GARDNER'S APPLICATION FOR UNEMPLOYMENT COMPENSATION BENEFITS.

{¶7}   In its sole assignment of error, the City argues that the trial court erred in upholding the Commission's decision allowing Mr. Gardner's claim for unemployment compensation benefits.  We disagree.

{¶8}   "This Court is required to focus on the decision of the []Commission, rather than that of the common pleas court, in unemployment compensation cases."  (Internal quotations and citations omitted.)  *Rodriguez v. S. Star Corp.*, 9th Dist. Medina No. 12CA0049-M,  2013-Ohio-2377, ¶ 6  "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the [Commission's] decision is supported by the evidence in the record."  *Id.*, quoting *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. ServS.*, 73 Ohio St.3d 694, 696 (1995).  "If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission."  R.C. 4141.282(H).  "This limited standard of review applies to all appellate courts."  *Rodriguez* at ¶ 6, quoting *Sturgeon v. Lucas Plumbing and Heating, Inc*., 9th Dist. Lorain No. 11CA010010, 2012-Ohio-2240, ¶ 5, quoting *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20.

{¶9}   "R.C. 4141.29 establishes the criteria for unemployment compensation benefits." *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.*, 113 Ohio St.3d 124, 127, 2007-Ohio-

1247, ¶ 14. "Benefits are compensation for a 'loss of remuneration due to involuntary total or partial unemployment.'" *Id.* at ¶ 14, quoting R.C. 4141.29. "An employee meets the definition of total unemployment for a given week if [he] performs no services and is due no payment." *Lorain Cty. Aud.* at ¶ 14, citing R.C. 4141.01(M).

{¶10} Even where an employee is totally unemployed, he "may not be eligible for benefits under certain circumstances." *Lorain Cty. Aud.* at ¶ 15. For instance, R.C. 4141.29(A)(4)(a)(i) provides that "[n]o individual is entitled to a waiting period or benefits for any week unless the individual * * * [i]s able to work and available for suitable work and, except as provided in division (A)(4)(a)(ii) or (iii) of this section, is actively seeking suitable work either in a locality in which the individual has earned wages subject to this chapter during the individual's base period, or if the individual leaves that locality, then in a locality where suitable work normally is performed." *See also generally* R.C. 4141.29. Further, there exists a "common-law exception to eligibility for benefits[, which] is specific to union-represented employees[,]" which we will discuss below. *Lorain Cty. Aud.* at ¶ 16.

{¶11} Here, the City appealed the Director's determination that Mr. Gardner was eligible for unemployment benefits. Thereafter, the Director issued a redetermination, concluding that:

> An issue concerning [Mr. Gardner's] leave of absence from [the City] beginning on 09/18/2012, was adjudicated as follows. [Mr. Gardner] is on a leave of absence, as required by a company labor contract or policy. Facts establish that [Mr. Gardner] meets the ability, availability, and active search for work requirements of Section 4141.29(A)(4)[.]

{¶12} In the City's appeal of the Director's redetermination, it maintained that Mr. Gardner was not on an approved leave of absence, and that he was not entitled to unemployment compensation because he was not able to work, available for suitable work, or actively seeking

suitable work. After the matter was transferred to the Commission, a hearing officer conducted a telephone hearing on the appeal. Thereafter, the hearing officer concluded that:

> [Mr. Gardner] exhausted all light duty work available to him under the union contract. [Mr. Gardner] cannot return to his employment as a firefighter without work restrictions. Although [Mr. Gardner] was able to continue working in a light duty capacity, continued light duty work was no longer available as of December 3, 2011. Based on the evidence presented the Hearing Officer finds [Mr. Gardner] was separated from the City [] due to a lack of work.

{¶13} The hearing officer thus modified the Director's redetermination issued on November 28, 2012 to conclude that Mr. Gardner was separated from the City due to lack of work.

{¶14} On appeal to this Court, the City does not challenge the determination that Mr. Gardner was totally unemployed during the period at issue. Instead, it argues that the testimony and record evidence established that Mr. Gardner was not able to work, not available for suitable work, and not actively seeking suitable work. Accordingly, the City maintains that Mr. Gardner was statutorily ineligible for unemployment benefits. The City also argues common law waiver of unemployment compensation benefits applies under the circumstances of this case. We will address these arguments separately.

Ability to Work

{¶15} First, the City maintains that the Commission erred in upholding Mr. Gardner's award of benefits because he was unable to work.

{¶16} During the hearing before the hearing officer, Mr. Gardner testified that he was capable of working during the period that he received unemployment compensation benefits. He had worked light duty work prior to this period, and he had commenced working as Safety Communications Director at the end of his unemployment period. He testified that he had work restrictions that prevented him from lifting, and using steps and ladders. Further, he could not

remain seated for prolonged periods of time. However, he acknowledged that, on a medical report pertaining to his restrictions, his doctor noted that he was able to work only "very limited duty which is not available."

{¶17} In his decision, the hearing officer noted that Mr. Gardner had worked light duty work through the point he was permitted to do so, and he had obtained work in a different position with the City prior to the hearing. The hearing officer concluded that Mr. Gardner was able to work light duty assignments in the interim between termination of his light duty work and commencement of his new position.

{¶18} The City argues that Mr. Gardner's medical documentation evidenced that he was (1) unable to work as a firefighter/medic, and (2) unable to perform any work because of the extent of his restrictions.

{¶19} With respect to the City's argument that Mr. Gardner was unable to work because he was unable to work as a firefighter/medic, the City's argument lacks merit. "The phrase 'able to work' * * * means 'physical capability to work[.]'" *Hinkle v. Lennox Furnace Co.,* 84 Ohio App. 478, 486 (3d Dist.1948); *see also Village of Chesapeake v. Ellis*, 4th Dist. Lawrence No. 93 CA 3, 1993 WL 491324, *3 (Nov. 24, 1993). Accordingly, Mr. Gardner was "able to work" so long as he was physically capable of working, and that phrase does not require that he be physically capable of working in his former position. *See Hinkle* at 486-87.

{¶20} With respect to the City's argument that the extent of Mr. Gardner's restrictions rendered him unable to work, this is a challenge to weight of the evidence. In determining whether the Commission's decision is against the manifest weight of the evidence:

> an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest

    miscarriage of justice that the [judgment] must be reversed and a new trial ordered.

(Internal quotations and citation omitted.) *Rodriguez*, 2013-Ohio-2377, at ¶ 6; *see also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

**{¶21}** Although the City reads the doctor's report as essentially stating that there existed no job that Mr. Gardner could perform with his restrictions, there was evidence before the Commission that Mr. Gardner was able to perform light duty work, was in fact performing such work prior to the expiration of that work under the TWP, and was at the time of the hearing employed in a position where he was able to work. Therefore, this is not a case where the Commission "clearly lost its way and created such a manifest miscarriage of justice" with respect to its finding that Mr. Gardner was able to work. *See Rodriguez* at ¶ 6. Accordingly, to this extent, the City's assignment of error is overruled.

Availability for Work

**{¶22}** The City further argues that Mr. Gardner was not separated from employment due to lack of work, but, instead, he was unavailable for work due to his medical restrictions. In support, the City maintains that Mr. Gardner's position was that of a firefighter/medic, and this position was available to Mr. Gardner. However, R.C. 4141.29(A)(4)(a)(i) provides that a claimant must be available for "suitable" work. R.C. 4141.29(F) provides that a determination of suitability includes consideration of factors such as the degree of risk to the claimant's health and safety, and the claimant's physical fitness for the work. The City has not developed any argument that Mr. Gardner was unavailable for "suitable" work, and we decline to develop an argument on its behalf. *See* App.R. 16(A)(7). To the limited extent that the City has argued that Mr. Gardner was unavailable for work, its assignment of error is overruled.

Actively Seeking Work

**{¶23}** The City further maintains that Mr. Gardner was not eligible for unemployment compensation benefits because he presented no evidence that he was "actively seeking suitable work[.]" R.C. 4141.29(A)(4)(a)(i).

**{¶24}** However, although a claimant must engage in a job search, he is not necessarily obligated under the statute to produce proof of his unemployment search at any particular time. R.C. 4141.29(A)(4)(b)(ii) provides, in relevant part, that "[f]or each week that the individual claims benefits, the individual shall keep a record of the individual's work search efforts and shall produce that record *in the manner and means prescribed by the director*." (Emphasis added.)

**{¶25}** Further, Ohio Adm.Code 4141-29-07 explains a claimant's obligation to produce documentation of his work search:

> (A) In order for an individual to be eligible to be credited with a waiting week or receive unemployment compensation benefits for a week, he or she must, unless otherwise provided pursuant to division (A)(4) of section 4141.29 of the Revised Code, provide documentation of the efforts on his or her part to search for work in his or her trade or occupation during each week. *The individual shall produce such documentation for examination upon request and in a manner prescribed by the director.*
>
> (B) An individual who is a member in good standing with a labor union which refers individuals to jobs, may meet the active work search requirements of division (A)(4) of section 4141.29 of the Revised Code by providing documentation that he or she is eligible for referral or placement for each week, and *producing documentation of such contact for examination upon request and in a manner prescribed by the director.*

(Emphasis added.)

**{¶26}** There is no indication in the administrative record as to whether the Director requested Mr. Gardner to produce documentation of his work search. Accordingly, we cannot discern why he would spontaneously provide the documentation for inclusion in the certified

record. The City maintains in its reply brief that documentation of the job search "should be collected by the Director and made part of the record when, as in the present case, an employer repeatedly raises the issue in its written appeals before the Hearing Officer and before the Commission." However, the City directs us to no authority which requires the Director to obtain documentation of a work search for inclusion in the certified record when the issue is raised by the employer through written appeals. *See* App.R. 16(A)(7). Nonetheless, the record contains evidence that Mr. Gardner, his union, and the mayor were negotiating a position for Mr. Gardner with the City during the benefit period at issue, and he began working in that position in December 2012. Accordingly, there is record evidence of a job search. Therefore, to the extent that the City maintains that the Commission erred in upholding the claim where there was *no* proof of a work search in the record, the City's assignment of error is overruled.

Common Law Waiver

{¶27} The City further argues that the Commission erred in failing to apply common law waiver to preclude Mr. Gardner from receiving unemployment compensation. Unemployment compensation is not generally subject to waiver, as R.C. 4141.32 provides:

> Except as permitted by Chapter 4141. of the Revised Code:
>
> (A) No agreement by an employee to waive his right to benefits is valid, nor shall benefits be assigned, released, or commuted; and
>
> (B) Such benefits are exempt from all claims of creditors and from levy, execution, garnishment, attachment, and all other process or remedy for recovery or collection of a debt, which exemption may not be waived.

{¶28} However, there exists a common law waiver exception to unemployment compensation, specific to union employees: "When an employee has a termination package pursuant to a collective-bargaining agreement between [his] union and the employer, the employee is deemed to have accepted the benefits of the package, and waived [his] right to

benefits, in return for [his] agreement to be terminated at a certain time." *Lorain Cty. Aud.*, 113 Ohio St.3d 124, 2007-Ohio-1247, at ¶ 16, citing *Ivy v. Dudley*, 6 Ohio St.2d 261 (1966); *see also Salzl v. Gibson Greeting Cards, Inc.*, 61 Ohio St.2d 35 (1980). "The termination when a collective-bargaining agreement exists is deemed to have been for just cause, rendering the employee statutorily ineligible for unemployment compensation." *Lorain Ct. Aud.* at ¶ 16, citing *Ivy* at 262; *see also* R.C. 4141.29(D)(2) (generally precluding the payment of unemployment compensation benefits where the claimant has "quit work without just cause or has been discharged for just cause in connection with the individual's work[]").

{¶29} Here, the circumstances do not fit squarely within the exception of common law waiver as described in *Lorain Cty. Aud.*, *Salzl*, and *Ivy*. In those cases, the exception was discussed in reference to the provision in a collective bargaining agreement pertaining to an agreed upon termination. *See Lorain Cty. Aud.* at ¶ 16, 19, 30 (distinguishing the facts present in that case from those where common law waiver would apply), *Salzl* at 37-38 ("There is a notable distinction between an employee who leaves work pursuant to a pension and retirement plan which was negotiated by his union and accepted as part of his contract and an employee who is forced to leave his employment because of a unilaterally enacted pension program calling for mandatory retirement at age 65."), and *Ivy* at 261 (claimants who were "retired pursuant to a compulsory retirement provision of a collective bargaining agreement" were deemed to have quit work without cause or discharged for just cause). The Ohio Supreme Court has noted that this exception to the bar on waiver is specific to union employees because they generally have superior bargaining power than non-union employees faced with unilateral terms of employment. *Lorain Cty. Aud.* at ¶ 17. However, here, although Mr. Gardner was a union employee, he was not terminated in accordance with a collectively bargained retirement package. *See Ivy* at 261.

Instead, Mr. Gardner was placed on unpaid sick leave. *See Lorain Cty. Aud.* at paragraph two of the syllabus ("A formal discharge is not required for a successful claim for unemployment benefits.").

{¶30} The City relies on the Eighth District's holding in *Continental Airlines, Inc. v. Ohio Dept. of Job & Family Servs.*, 173 Ohio App.3d 311, 2007-Ohio-5434 (8th Dist.) to argue that common law waiver applies where a union employee is placed on leave as required by the terms of a collective bargaining agreement. There, the Eighth District held that common law waiver applied to except a flight attendant from unemployment compensation benefits where she was placed on leave, pursuant to the terms of a collective bargaining agreement, upon reaching a certain point in her pregnancy. *Id.* at ¶ 2-6.

{¶31} With respect to the holding in *Continental Airlines, Inc.*, we first note that we are not bound by the holdings of our sister districts. *State v. Williams*, 9th Dist. Summit No. 27482, 2015-Ohio-2632, ¶ 9. Moreover, *Continental Airlines, Inc.* is factually distinguishable from the instant case, as the collective bargaining agreement there required flight attendants to take temporary leave under certain conditions. *See Continental Airlines, Inc.* at ¶ 2-6, 47. Here, the City placed Mr. Gardner on a sick leave without pay status after he exhausted his permitted light duty work time and his accrued paid leave time. There is no indication as to how long Mr. Gardner could have remained on this leave status and no indication in the record that this leave status was required by the terms of any agreement between his union and the City. Although the TWP was included in the administrative record, the collective bargaining agreement between the

union and the City was not included in the record.[1] The City has not directed us to any part of the TWP that requires an employee to be placed on sick leave without pay at the expiration of the light duty work and exhaustion of accumulated paid leave time.

{¶32} We decline to extend common law waiver to the circumstances present in this case, where there is no termination package at issue, where the leave at issue could last indefinitely, and where the leave at issue was not contemplated as part of any collectively bargained agreement in the record. *See Lorain Cty. Aud.*, 113 Ohio St.3d 124, 2007-Ohio-1247, at ¶ 31 ("The protections of an employee under R.C. 4141.29 are to be liberally construed. Thus, the exceptions to R.C. 4141.29 should be narrowly construed. The exceptions to the bar on waiver (such as union-contract and educational-institution employees) do not specifically apply to the employee in this case and should not be analogized to apply to the employee in this case.").

{¶33} Accordingly, the City's sole assignment of error is overruled.

III.

{¶34} The City's assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

---

[1] The City purported to attach a copy of the collective bargaining agreement to its appeal from the Director's redetermination. However, no attachments to that appeal were included in the administrative record. The City moved this Court to supplement the record with the purported attachments to its appeal of the redetermination. We denied this request as these attachments were not before the trial court.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

PATRICIA AMBROSE, Director of Law, and TAMMY L. KALAIL and  ELLEN LANDER NISCHT, Assistant Directors of Law, for Appellant.

SUSAN M. SHEFFIELD, Attorney at Law, for Appellee.

JOHN R. GARDNER, pro so, Appellee.