[Cite as *Lorain Cty. Community College v. Dept. of Job & Family Servs.*, 2018-Ohio-2241.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

LORAIN COUNTY COMMUNITY
COLLEGE

      Appellant

      v.

OHIO DEPARTMENT OF JOBS &
FAMILY SERVICES

      Appellee

C.A. No.      17CA011183

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     17CV191587

DECISION AND JOURNAL ENTRY

Dated: June 11, 2018

SCHAFER, Presiding Judge.

**{¶1}** Appellant, Lorain County Community College (LCCC) appeals from the judgment of the Lorain County Court of Common Pleas affirming the decision of the Ohio Unemployment Compensation Review Commission ("Commission"), which found Appellee, Lonna Hoffman eligible for unemployment compensation benefits. For the reasons that follow, we affirm.

I.

**{¶2}** LCCC employed Hoffman from May 8, 2015 until September 19, 2016, when LCCC terminated Hoffman for threatening an employee in violation of the college's policies. Hoffman subsequently filed an application for determination of benefit rights with Appellee, Ohio Department of Job and Family Services Office of Unemployment Compensation, for a benefit year beginning September 18, 2016. LCCC opposed Hoffman's application on the basis

that Hoffman was discharged for just cause. The Department of Job and Family Services disallowed Hoffman's application. Hoffman appealed the decision, but the director issued a redetermination affirming the original decision. Hoffman then appealed to the Commission. A Commission hearing officer conducted a telephone hearing on November 22, 2016. The hearing officer thereafter reversed the director's determination, finding that LCCC had discharged Hoffman without just cause. LCCC filed a request for review of the hearing officer's decision, however, the Commission disallowed the review. LCCC appealed the decision to the Lorain County Court of Common Pleas. The trial court affirmed the Commission's decision on July 13, 2016.

{¶3} LCCC filed this timely appeal, raising one assignment of error for our review.

II.

## Assignment of Error

**The Review Commission committed reversible error when it found that the Claimant's threat to kill one of her co-workers was merely a joke because the evidence that supports this conclusion is either absent from the record or based on an unreasonable interpretation of the facts. Threatening harm to a co-worker is in violation of express prohibitions that are contained in LCCC's employment policies and constitutes an unreasonable disregard for the employer's best interest. The Claimant therefore did not meet her burden to prove that she was without fault in regard to her termination, and as such, the Commission's decision should be reversed or remanded for further fact finding.**

{¶4} In its sole assignment of error, LCCC argues that the Commission's decision is unreasonable and against the manifest weight of the evidence. We disagree.

{¶5} An interested party may appeal a decision of the Commission to the court of common pleas of the county where the party is a resident or was last employed. R.C. 4141.282(A) and (B). Pursuant to R.C. 4141.282(H):

The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission.

{¶6} "This limited standard of review applies to all appellate courts." *Sturgeon v. Lucas Plumbing & Heating Inc.*, 9th Dist. No. 11CA010010, 2012-Ohio-2240, ¶ 5, quoting *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2987, ¶ 20. Accordingly, "[t]his Court is required to focus on the decision of the [] Commission, rather than that of the common pleas court, in unemployment compensation cases." (Internal quotations and citations omitted.) *Rodriguez v. S. Star Corp.*, 9th Dist. Medina No. 12CA0049-M, 2013-Ohio-2377, ¶ 6. "The determination of purely factual questions is primarily within the province of the hearing officer and the [Commission]." *General Die Casters, Inc. v. Dir, Ohio Dept. of Job & Family Servs.*, 9th Dist. Summit No. 27701, 2015-Ohio-4033, ¶ 8, citing *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17 (1985). "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the [Commission's] decision is support by the evidence in the record." *Rodriquez* at ¶ 6, quoting *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995). "Every reasonable presumption should be made in favor of the Commission's decision and findings of fact." *General Die Casters* at ¶ 8, citing *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988). Moreover, "[t]he fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Commission]'s decision." *Irvine* at 18, citing *Craig v. Bur. of Unemp. Comp.*, 83 Ohio App. 247, 260 (1st Dist.1948).

{¶7} In order to qualify for unemployment compensation benefits, a claimant must satisfy the requirements of R.C. 4141.29(D)(2)(a), which provides that no individual may be paid

benefits for the duration of her unemployment if the director finds that the individual was discharged for just cause in connection the individual's work. The Supreme Court of Ohio has recognized "just cause" in the "statutory sense" to mean "'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine*, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist.1975). "'Whether just cause for termination of employment exists depends on the unique facts of the case.'" *General Die Casters* at ¶ 9, quoting *Univ. of Toledo Chapter of Am. Assn. of Univ. Professors v. Erard*, 6th Dist. Lucas No. L-14-1185, 2015-Ohio-2675, ¶ 7. "The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act." *Id.* Essentially, "'[t]he act was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment *through no fault * * * of [her] own*.'" (Emphasis added.) *Irvine* at ¶ 17, quoting *Salz v. Gibson Greeting Cards, Inc.*, 61 Ohio St.2d 35, 39 (1980).

{¶8} In determining that LCCC terminated Hoffman without just cause, the hearing officer found that Hoffman's sworn testimony was more credible than the written account relied on by LCCC in terminating Hoffman's employment. Specifically, the hearing officer found that Hoffman had credibly testified that she was joking and that J.M. did not express any fear or concern for his safety during the conversation which occurred in front of two other co-workers. Accordingly, the hearing officer determined that Hoffman had not committed sufficient fault or misconduct to suspend her unemployment compensation benefits and that LCCC had discharged Hoffman without just cause.

{¶9} In making this determination, the hearing officer also made the following findings of facts. Hoffman was employed by LCCC from May 8, 2015, through September 2016, during

which time she served as a project manager managing LCCC's Trade Adjustment Assistance Community College and Career Training program ("TAACCCT"). On August 24, 2016, a co-worker, J.M., reported to his manager that Hoffman had threatened to kill him and that he feared for his safety. The hearing officer found that the report was not accurate. Although the hearing officer acknowledged that Hoffman did jokingly state she would kill or hug J.M. depending on the outcome of a meeting with management concerning an email Hoffman had written and J.M. had forwarded to her supervisor, the hearing officer found that the email was not inappropriate or unprofessional and that Hoffman was not legitimately concerned about the outcome of the meeting. The hearing officer further found that Hoffman made the statements in a joking manner and recognized that Hoffman is five feet, five inches tall and thin, while J.M. is over six feet tall. Additionally, Hoffman and J.M. did not argue during the conversation which occurred in the presence of two other employees.

{¶10} On appeal, LCCC argues that the hearing officer's finding that Hoffman was joking is unreasonable and against the manifest weight of the evidence because (1) the hearing officer's finding of fact that the conversation between Hoffman and J.M. occurred in the presence of two other employees is not supported by the record; (2) the hearing officer's finding of fact that Hoffman was not concerned about the upcoming meeting because the message that J.M. forwarded to Hoffman's supervisor was not inappropriate is contrary to the evidence in the record; and (3) it was unreasonable for the hearing officer to rely on the relative size of the parties because "it is unreasonable to base a decision that the veracity of an alleged threat to kill someone cannot be serious if the person making the threat is physically smaller than the person receiving the threat."

{¶11} However, upon review of the record, we cannot say that the hearing officer's findings of fact are not supported by the record. At the hearing, LCCC presented testimony from Keith Brown, LCCC's director of human resources and campus security. Hoffman testified on her own behalf. Mr. Brown testified that Hoffman was placed on administrative leave based on a written complaint from J.M. stating that Hoffman had threatened him. Although J.M. did not testify at the hearing, Mr. Brown read J.M.'s unsworn complaint into the record. Mr. Brown testified that J.M.'s complaint stated that he was walking by the conference room where he observed Hoffman sitting at the table and four other individuals, one identified by name, standing around the conference table talking. J.M. then stated that he heard Hoffman call his name and when he returned to the conference room, Hoffman told him that there was a meeting the following day concerning an email she had authored that was forwarded to her supervisor. J.M.'s complaint stated that when he identified himself as the person who forwarded the email, Hoffman stated that she said "if I get fired tomorrow, I'll hunt you down and I will kill you."

{¶12} Mr. Brown stated that during his investigation into the incident, he received a statement from Hoffman. He stated that Hoffman couldn't remember exactly what she said, but that she did say something like "I'll either hug ya or I'll kill ya" in a joking manner. Mr. Brown stated that he spoke to one person Hoffman identified as a possible witness, but that individual stated he did not see or hear the exchange between Hoffman and J.M. Although Hoffman identified a second co-worker that may have been a witness, Mr. Brown stated he was unable to get in touch with her. Additionally, although J.M.'s complaint identified four other people as being present in the conference room, there was no indication in the record that Mr. Brown spoke with the named individual or attempted to identify the other three. Mr. Brown further stated that

Hoffman had never been disciplined before and there were "no prior issues" between Hoffman and J.M.

{¶13} Hoffman testified with regard to the email that J.M. had forwarded to her supervisor. She stated that the email was concerning whether another employee could have her annual membership fees for an organization paid for by a grant and that she had forwarded the email to J.M. and another employee asking if it should be covered. J.M. then shared her email with management. Hoffman stated that she knew J.M. had shared her email prior to the incident at issue because her supervisor had already informed her as much. Accordingly, Hoffman thanked J.M. during the conversation for sharing the email because "frankly, it was good information that needed to be discussed." Nonetheless, she asked J.M. to let her know the next time he forwarded one of her emails so she would not be blindsided.

{¶14} Hoffman testified that just prior to the incident, she was sitting at a table preparing for a meeting and talking with co-workers. She stated that the atmosphere was "light-hearted" and "very jovial" because she and two others had previously been looking at funny pictures of one of the co-worker's daughter and laughing. She stated that when J.M. walked by, they both said "hi" and that J.M. came over to ask her why she was working so late. She stated that she was working late to prepare for the following day's meeting. She also testified that she made a point to tell him that she was not mad about his sharing of her email and that she hoped some good would come out of it and that "it was something that needed addressed." She then "said to him, very jokingly, 'Yeah, depending upon tomorrow's outcome of the meeting, I'll either hug you or hurt you' or * * * 'I'll hug you or kill ya.'" She could not remember her exact words, but stated that she was laughing when she said it and that J.M. laughed and then gestured with his right hand in way that Hoffman interpreted to mean "Oh, get out", snickered, and then

left. Hoffman stated that she did not believe J.M. had taken her seriously because he didn't question her sincerity or if she was joking and did not look puzzled, startled, or scared. She also stated that she was five foot, five inches tall, 130 pounds, and seated at the time of the exchange and that J.M. was substantially bigger at approximately six feet tall and 250 pounds.

{¶15} Hoffman further testified that prior to the incident she and J.M. had a jovial relationship, spoke a couple times a month, and had even gone to lunch a few times. She also stated that she was not "setting a precedent or acting out of character" because the two had shared casual humor in the past. Hoffman described the incident as a "big misunderstanding" and that what she said was "being taken completely out of context." She testified that she "would never say anything to hurt anybody's feelings, much less make them upset or, or feel threatened in any way."

{¶16} Based on the above evidence, we conclude that the hearing officer's findings of fact are supported by competent credible evidence.

{¶17} Finally, regarding LCCC's contention that it was unreasonable for the hearing officer to rely on the relative size of the parties because "it is unreasonable to base a decision that the veracity of an alleged threat to kill someone cannot be serious if the person making the threat is physically smaller than the person receiving the threat," we note that the hearing officer made no such finding or inference in its journal entry. Although the hearing officer did recognize the physical differences of Hoffman and J.M. in his findings of fact, the hearing officer did not specifically rely on this information in its reasoning. Instead, the hearing officer found that Hoffman had credibly testified that she was joking and that J.M. did not express any fear or concern for his safety during the conversation which occurred in front of two other co-workers.

**{¶18}** Therefore, we cannot conclude that the hearing officer's decision is unlawful, unreasonable, and unsupported by the evidence in the record.  Accordingly, LCCC's sole assignment of error is overruled.

### III.

**{¶19}** LCCC's assignment of error is overruled.  Therefore, the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.


<u>APPEARANCES</u>:

BRIAN M. WHITE, Attorney at Law, for Appellant.

MICHAEL DEWINE, Ohio Attorney General, and LAURENCE R. SNYDER, Senior Assistant Attorney General, for Appellee.

PATRICK J. MILLIGAN, Attorney at Law, for Appellee.