[Cite as *Alttran, Inc. v. Dept. of Job & Family Servs.*, 2019-Ohio-1430.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

ALTTRAN, INC.

     Appellant

     v.

DIRECTOR, OHIO DEPARTMENT OF
JOB AND FAMILY SERVICES, et al.

     Appellees

C.A. No.     29244

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2018-07-3130

DECISION AND JOURNAL ENTRY

Dated: April 17, 2019

CALLAHAN, Judge.

**{¶1}** Appellant, Alttran, Inc., appeals an order of the Summit County Court of Common Pleas that affirmed a decision of the Ohio Unemployment Compensation Review Commission. This Court affirms.

I.

**{¶2}** Alttran terminated Brandon McGruder's employment on March 23, 2018, citing five violations of its attendance policy for which Mr. McGruder was progressively disciplined in the previous twelve-month period. According to Alttran, the violations of the attendance policy that led up to his termination included two days on which he clocked in two minutes late, one day on which he was one minute late, and one day on which he left early. On the date of Mr. McGruder's final attendance policy violation—which resulted in his termination—he was late because his car slid in snowy conditions as he turned into Alttran's parking lot.

**{¶3}** Mr. McGruder filed a claim for unemployment compensation. The claim was allowed, and Alttran appealed. A redetermination affirmed the allowance of the claim. Alttran appealed the redetermination to the Unemployment Compensation Review Commission ("UCRC"), and a hearing officer affirmed the benefit determination. Alttran requested review of the decision by the UCRC, but the UCRC denied the request. Alttran ultimately filed an administrative appeal in the Summit County Court of Common Pleas. The trial court also affirmed the determination, and Alttran filed this appeal.

II.

**ASSIGNMENT OF ERROR**

> THE COURT OF COMMON PLEAS AND UNEMPLOYMENT COMPENSATION REVIEW COMMISSION ERRED BY AFFIRMING THE DECISION FROM THE OHIO DEPARTMENT OF JOB AND FAMILY SERVICES GRANTING UNEMPLOYMENT BENEFITS TO [MR. MCGRUDER].

**{¶4}** Alttran's assignment of error is that the trial court erred by affirming the decision allowing Mr. McGruder's unemployment benefits because that decision is unlawful and is counter to the manifest weight of the evidence.

**{¶5}** R.C. 4141.282(H), which provides for an appeal from decisions of the UCRC to a court of common pleas, explains that the court of common pleas "shall affirm the decision of the commission" unless it finds that the decision "was unlawful, unreasonable, or against the manifest weight of the evidence." The standard of review is the same for every reviewing court. *Williams v. Ohio Dept. of Job and Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio-2897, ¶ 20, citing *Irvine v. State Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985). *See also Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694 (1995), paragraph one of the syllabus. This power of review is "limited," and as such, a reviewing court cannot make factual

findings or determine the credibility of witnesses. *Irvine* at 18. The procedure for appeals from UCRC decisions contemplates that reviewing courts will "'leave undisturbed the [UCRC's] decision on close questions.'" *Id*., quoting *Charles Livingstone & Sons, Inc. v. Constance*, 115 Ohio App. 437, 438 (7th Dist.1961). Consequently, this Court must affirm the UCRC's decision if it is supported by competent, credible evidence. *Williams* at ¶ 20, citing *Irvine* at 18.

{¶6} Under R.C. 4141.29(D)(2)(a), no individual who has "quit work without just cause or has been discharged for just cause in connection with the individual's work" may receive unemployment compensation. "Just cause" means "'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12 (10th Dist.1975). When considering whether an employee has been terminated for just cause, "[f]ault on behalf of the employee is an essential component[.]" *Tzangas, Plakas & Mannos* at paragraph two of the syllabus. "Just cause" for purposes of R.C. 4141.29(D)(2)(a) is, therefore, a different concept than may be denoted by the phrase in other contexts: an employer may be justified in discharging an employee under circumstances that would still entitle the employee to receive unemployment compensation. *Durgan v. Ohio Bur. of Emp. Servs.*, 110 Ohio App.3d 545, 549 (9th Dist.1996).

{¶7} The existence of fault "cannot be rigidly defined" and must be evaluated with consideration for the facts in each case. *Tzangas, Plakas & Mannos* at 698, citing *Irvine* at 17. "An employer may reasonably set the days and hours of employment" and "[w]hether an employee who is discharged for failing to comply with the schedule has been discharged for 'just cause' within the contemplation of R.C. 4141.29(D)(2)(a) is a question of fact[.]" *Schadek v. Admr., Ohio Bur. of Emp. Servs.*, 2d Dist. Montgomery No. 11569, 1990 WL 80560, *2 (June 15, 1990).

**{¶8}** Alttran's attendance policy provides, in relevant part, that "[g]etting in late to work or leaving early" results in five steps of progressive discipline: a verbal warning, two written warnings, a suspension, and dismissal. It also clarifies that "[n]o 'clock in' is considered late unless approved by supervisor." In other words, a degree of supervisor discretion is built into the Alttran attendance policy, and the characterization of an incident of tardiness as a violation is contingent on the supervisor's exercise of that discretion. For this reason, and because the Alttran policy makes separate provision for excused medical and personal absences from work, it is a traditional attendance policy rather than a no-fault policy. *See generally Durgan* at 550, citing *Sutherlin v. Interstate Brands Corp.*, 79 Ohio App.3d 635, 636 (1st Dist.1992) (explaining that under a no-fault attendance policy, "an employer assesses absenteeism without regard to its causes, empowers the worker with the freedom to control his continued employment and also relieves the employer of having to determine whether to excuse the absence.").

**{¶9}** In this case, the UCRC hearing officer concluded that Mr. McGruder was not terminated for just cause because "the majority of those attendance infractions were due to circumstances beyond the claimant's control" and consequently, "[w]hile the claimant violated the attendance policy misconduct has not been shown." Five violations of the attendance policy were at issue.

**{¶10}** On August 18, 2017, and September 28, 2017, Mr. McGruder clocked in two minutes late. His supervisor provided him with a "Rule Violation Form" dated August 23, 2017, which noted that he clocked in two minutes late on August 18, 2017. Although check boxes were provided for the purpose, the form did not indicate at which stage of the progressive discipline process the violation fell. Mr. McGruder acknowledged receipt of this form with his signature. It is unclear under the circumstances whether this form documented his first or second

violation of the attendance policy. Another Rule Violation Form purported to document that Mr. McGruder arrived two minutes late on September 28, 2017. That form is undated, was not signed by any supervisor, and did not indicate at which stage of the progressive discipline process the violation fell. It does not bear a signature indicating that Mr. McGruder received it, but he testified that he had notice of the violation. Like the first, it is unclear whether the form documents the second or third violation.

{¶11} In early November 2017, Mr. McGruder left early because of a family emergency. The record reflects some confusion regarding the date of this incident. A Rule Violation Form dated November 28, 2017, documents that absence. It is signed by Mr. McGruder's supervisor, and Mr. McGruder acknowledged receipt. That form provides that it documents Mr. McGruder's fourth violation and that his "in-house suspension will be 11-20-17."

{¶12} On March 2, 2018, Mr. McGruder was tardy by one minute because a snowstorm delayed his arrival. An undated form purports to document this violation. That form does not contain a supervisor's signature. Like earlier forms, the form does not indicate at which level of progressive discipline the violation fell. Without explanation, the form also states that it records Mr. McGruder's fourth violation and provides that he "will serve a suspension on 3-23-18." Mr. McGruder did not sign to acknowledge receipt of the notice, and he testified that he did not receive it until the day he was discharged.

{¶13} During the appeal hearing before the UCRC hearing officer, Mr. McGruder explained the circumstances surrounding this violation. According to his testimony, a snowstorm delayed his morning commute and, although he arrived at his worksite on time, he would have clocked in one minute late. Mr. McGruder stated that he went to his production supervisor immediately, and the supervisor responded by saying, "'That's fine. It's a snow

storm and it's an act of God and more than one person's late.'" According to Mr. McGruder, the supervisor "told me he would look out for me and he would sign in that I talked to him when I got there[.]" Although Alttran's records indicate that Mr. McGruder clocked in one minute late, Mr. McGruder insisted that he did not clock in at all because of his conversation with the supervisor.

{¶14} On March 21, 2018, Mr. McGruder was late because his car slid into a ditch as he turned into the Alttran parking lot. Another undated form purports to document this violation and, like the previous form, it does not contain the signature of a supervisor or indicate Mr. McGruder's acknowledgment of receipt. The form states that Mr. McGruder "arrived late for his shift and did not clock in." Mr. McGruder explained that he was able to get his car out of the ditch and that he arrived about ten minutes late for his shift. Mr. McGruder testified that he did not clock in, but went straight to a different supervisory employee, the line lead on his production line. According to Mr. McGruder, that employee replied, "'Okay. I got you. I'll go tell Rick.'" Mr. McGruder explained that "Rick" was "the main supervisor," and he opined that "In both of those cases, [the supervisors] didn't, obviously, talk to Rick. They wrote me up and didn't tell me I got wrote up, so I was unaware of the situation until I was fired."

{¶15} With respect to the March 2, 2018, incident, production supervisor Tim Haidet confirmed that Mr. McGruder did approach him as soon as he arrived at work. Mr. Haidet also testified, however, that none of the employees who were late on the date of the snowstorm were excused. Mr. Haidet testified that he did not remember giving Mr. McGruder the written notice of that violation, but thought that he told him about it "a couple days later." Mr. Haidet also testified that the lead supervisor did not have the authority to excuse absences. With respect to previous incidents, Mr. Haidet did not offer any explanation regarding why some had been

presented to Mr. McGruder in writing while others had not, nor could he explain the discrepancy between the progressive discipline levels on several of the forms. A human resources officer who testified on behalf of Alttran could also not explain the discrepancies between information on the violation forms at issue.

{¶16} When an employer institutes a no-fault attendance policy, a pattern of absence from work can constitute just cause for purposes of R.C. 4141.29(D)(2)(a) by virtue of the policy itself. *See Durgan*, 110 Ohio App.3d at 550. This is the case even though, under such a policy, "an employer assesses absenteeism without regard to its causes[.]" *Id*. at 550. In other words, under a no-fault attendance policy, an employee's fault with respect to individual incidents of nonattendance is not at issue. *See id*. As noted above, however, Alttran's policy does not reflect a no-fault system because it provides for different categories of absence and explicitly gives supervisors the discretion to excuse absences from work. Consequently, the fundamental principle that "[f]ault on behalf of the employee is an essential component" of a just cause determination under R.C. 4141.29(D)(2)(a) holds true. *See Tzangas, Plakas & Mannos*, 73 Ohio St.3d 694, at paragraph two of the syllabus.

{¶17} As an initial matter, Alttran maintains that the hearing officer's decision is unlawful because it requires "misconduct" rather than "fault" on the part of the employee. The use of this terminology interchangeably does not represent an error of law in every case. *See*, *e.g.*, *Lorain Cty. Community College v. Ohio Dept. of Jobs & Family Servs.*, 9th Dist. Lorain No. 17CA011183, 2018-Ohio-2241. There are situations in which "fault" for purposes of R.C. 4141.29(D)(2)(a) may exist in the absence of "misconduct," so the two are not uniformly coextensive. For example, an employee may be terminated for accumulating the maximum number of absences permitted under a no-fault attendance policy, as noted above. Similarly,

when employees prove to be unsuitable for their jobs or unable to complete their job requirements, "fault" may exist for purposes of unemployment compensation without any incidents of misconduct. *See*, *e.g.*, *Tzangas, Plakas, & Mannos* at 698-699. In this case, however, Alttran terminated Mr. McGruder based on incidents of alleged misconduct under its absenteeism and tardiness policy, and the issues of "fault" and "misconduct" for disciplinary purposes have a closer relationship. We cannot say that the hearing officer's use of the word "misconduct" in this context rendered the decision unlawful for purposes of R.C. 4141.282.

**{¶18}** The existence of employee fault as part of the just cause determination with respect to violations of an attendance policy is a question of fact. *Schadek* 1990 WL 80560, at *2. Accordingly, this Court must defer to the UCRC's determination of questions regarding credibility, and in a close case, we must leave the UCRC's decision undisturbed. *Irvine*, 19 Ohio St.3d at 18. In this case, the hearing officer's determination that McGruder was not at fault in connection with the attendance violations appears to be based, in large measure, on his evaluation of the relative credibility of the witnesses, including Mr. McGruder's position that Alttran failed to follow its own disciplinary policy. This Court cannot second-guess those determinations. *Id*. The hearing officer's decision was supported by competent, credible evidence. *See Williams*, 129 Ohio St.3d 332, 2011-Ohio-2897, at ¶ 20. We cannot conclude that the determination that Alttran terminated Mr. McGruder without just cause was unlawful, unreasonable, or against the manifest weight of the evidence.

**{¶19}** Alttran's assignment of error is overruled.

### III.

**{¶20}** Alttran's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

RICHARD L. WILLIGER, Attorney at Law, for Appellant.

MICHAEL DEWINE, Attorney General, and LAURENCE R. SNYDER, Assistant Attorney General, for Appellee.

BRANDON G. MCGRUDER, pro se, Appellee.